UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


PAUL STEIN and LYNN STEIN,

                Plaintiffs,

v.                                       Case No. 10-14026
                                       Honorable Julian Abele Cook, Jr.

U.S. BANCORP and WELLS FARGO BANK,
N.A.,

                Defendants.


<u>ORDER</u>

       The Plaintiffs in this action, Paul Stein and Lynn Stein (hereinafter referred to collectively as the "Steins"), allege that the two Defendants, U.S. Bancorp and Wells Fargo Bank, N.A., breached the parties' contract and improperly foreclosed their mortgage. This action was filed in the Wayne County Circuit Court of Michigan and subsequently removed by the Defendants to this Court on the basis of its diversity jurisdiction. 28 U.S.C. §§ 1332; 1441. Currently before the Court is the Defendants' motion for dismissal and/or the entry of a summary judgment.

I.

       Prior to a foreclosure sale and the expiration of the period of redemption, the Steins owned a parcel of real property known as 17386 Palmer Street in Melvindale, Michigan. In the course of acquiring their home, they had executed a mortgage loan which encumbered the property in favor of Plymouth Exchange Mortgage Corporation. The mortgage was subsequently assigned to a third party, and eventually to Bancorp, the mortgagee at the time of

the disputed issues herein. Wells Fargo was the servicer of this loan for a portion of the relevant time, including the period up to and including when the Melvindale property was the subject of the foreclosure sale. The Steins state that the underlying mortgage loan was a Federal Housing Administration ("FHA") loan.

At some unspecified point in time, the Steins fell behind in their mortgage payments. In July 2009, they executed a special forbearance agreement ("Agreement 1") with Wells Fargo which allowed them to pay a reduced amount of $622.27 for six consecutive months - a payment schedule that was followed by a commitment to make a lump sum payment of the remaining deficiency (to wit, $11,780.72) at the end of the earlier time period. The Steins complain that, although they complied with every provision of Agreement 1, Wells Fargo falsely claimed that it did not receive the first of the six scheduled payments. At that point, Wells Fargo referred the mortgage to its foreclosure counsel, Trott & Trott P.C. ("Trott"), for appropriate legal action.

In August 2009, Trott transmitted a "fourteen day letter" to the Steins, both of whom were advised that they had a period of fourteen days in which to request a meeting with Wells Fargo for the purpose of discussing a modification of their loan agreement. *See* Mich. Comp. Law. § 600.3205a(1)(d). Such a meeting was requested by the Steins, who met with a Wells Fargo representative in October 2009. During the following month, they received a proposal from Wells Fargo to adopt a second special forbearance agreement ("Agreement 2"), which would require them to make payments in the amount of $1,244.54 for each of the following three months, with the first payment due on December 1, 2009. The Steins state that - despite their acceptance of, and compliance with, the terms of Agreement 2 - they were advised by

2

Trott in a letter on January 28, 2010, that their efforts to obtain a modification of their fiscal obligations had been rejected by Wells Fargo because they did not satisfy "one or more guidelines established by the investor." Trott also advised them that, under these circumstances, foreclosure proceedings against their home would follow.

The Defendants caused notice of the foreclosure sale - scheduled for March 2010 - to be published in the Detroit Legal News. Prior to the foreclosure sale being conducted, the Steins filed a petition for Chapter 7 Bankruptcy in the United States Bankruptcy Court for the Eastern District of Michigan. Thereafter, the Defendants arranged for the publication of notices of the adjournment of the foreclosure sale each week in the Detroit Legal News. The foreclosure sale was eventually consummated on May 5, 2010. There is no evidence that the Steins made any effort to stay or challenge the foreclosure sale.

In this pending lawsuit, the Steins claim that Agreement 2, to which reference has been made hereinabove, is a valid and binding contract, which was breached by the Defendants who refused to accept their payments and proceeded to foreclose on their property. Moreover, they maintain that the foreclosure procedure was improperly conducted in violation of (1) the Defendants' obligation under Mich. Comp. Law §§ 600.3205a and 600.3205c to offer them a loan modification according to the relevant statutory guidelines; (2) the terms of Agreement 2; and (3) the bankruptcy stay order. Thus, it is the Steins' belief that the Court should (1) enter a judgment in their favor in an amount greater than $25,000.00; (2) set aside the foreclosure sale; (3) direct the Defendants to specifically perform their obligations as set forth under Agreement 2; (4) compel the Defendants to offer them a loan modification in compliance with Mich. Comp. Law § 600.3205c; and (5) award them all of the attorney fees and costs that were

3

incurred by them in this action.

The Defendants have responded to the Steins' arguments with a motion to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) or 56. In doing so, they submit that the Steins lack standing to sue because all of their rights in and title to the property in Melvindale were extinguished upon the expiration of the statutory redemption period. The Steins dispute this characterization of the law, and argue that - even if it were an accurate statement of the law - the circumstances of their situation qualify for an exception to its application. In their response, the Steins have raised an additional reason as to why, in their opinion, the challenged foreclosure procedure was invalid; to wit, they submit that, due to irregularities in the chain of title, the Defendants lacked the legal right to foreclose on the property.

## II.

The purpose of the summary judgment rule, Federal Rule of Civil Procedure 56, "is to isolate and dispose of factually unsupportable claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Therefore, the entry of a summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When assessing a request for the entry of a summary judgment, the Court "must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party." *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987).

In order for a dispute to be genuine, it must contain evidence upon which a jury could find in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

4

(1986); *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 560 (6th Cir. 2004). Thus, a court must recognize that the moving party has the initial obligation of identifying those portions of the record which demonstrate the absence of any genuine issue of a material fact. *Celotex*, 477 U.S. at 323. Thereafter, the nonmoving party must "come forward with some probative evidence to support its claim and make it necessary to resolve the differences at trial." *Boyd v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir. 1991); *see also* Fed. R. Civ. P. 56(e)(2); *Anderson*, 477 U.S. at 256. The entry of a summary judgment is appropriate if the nonmoving party fails to present evidence which is "sufficient to establish the existence of an element essential to its case, and on which it will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The Court initially notes that the Defendants filed their motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) after having filed an answer, thereby rendering it untimely. *See* 5B Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1357 (3d ed. 2004) ("[A] post-answer Rule 12(b)(6) motion is untimely and . . . some other vehicle, such as a motion for judgment on the pleadings . . . must be used"). The Sixth Circuit Court of Appeals has treated post-answer Rule 12(b)(6) motions as requests for the entry of judgments on the pleadings under Fed. R. Civ. P. 12(c).[1]  *See, e.g.*, *Satkowiak v. Bay Cnty. Sheriff's Dep't.*, 47 Fed. Appx. 376, 377 n.1 (6th Cir. 2002). Moreover, Fed. R. Civ. P. 12(h)(2) provides that a contention by the defense that an adversary had failed to state a claim upon which relief can be granted "may be raised . . . by a motion under Rule 12(c)." Accordingly, the Court will treat this motion to dismiss as a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c).

---

[1]Fed. R. Civ. P. 12(c) states: "After the pleadings are closed - but early enough not to delay trial - a party may move for judgment on the pleadings."

5

The standard of review for a motion for judgment on the pleadings for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(c) is the same as that which should be undertaken when evaluating a motion brought pursuant to Rule 12(b)(6). *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010). Thus, a district court must accept the plaintiff's well-pleaded allegations as true and construe each of them in a light that is most favorable to it. *Bennett v. MIS Corp.*, 607 F.3d 1076, 1091 (6th Cir. 2010). However, this assumption of truth does not extend to the plaintiff's legal conclusions because "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009). The complaint "must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (citation and internal quotation marks omitted).

In order to survive an application for dismissal, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this standard, the "plaintiff [must] plead [ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949; *see also Albrecht*, 617 F.3d at 893 (applying these standards to motion brought under 12(c)). In essence, "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

III.

The Defendants contend that they are entitled to the entry of a summary judgment and

6

dismissal of the complaint because, under settled Michigan law, the Steins do not have standing to assert any claims with respect to their claimed property interests after the expiration of the statutory redemption period. In their response, the Steins submit that this standard is not applicable to their case because they are not seeking to redeem the property. Rather, it is their desire to require the Defendants to live up to their obligations under Michigan law. Furthermore, they assert that even if this standard does apply in these circumstances, the Court should grant to them an equitable extension of the redemption period.

In addressing the Steins' first argument, the Court turns to the Michigan statute which addresses the foreclosure procedures that must be followed when the acquisition of property interests is sought through the process of advertisement:

> Unless the premises described in shall be redeemed within the time limited for such redemption as hereinafter provided, such deed shall thereupon become operative, and shall vest in the grantee therein named, his heirs or assigns, all the right, title, and interest which the mortgagor had at the time of the execution of the mortgage, or at any time thereafter . . . .

Mich. Comp. Law § 600.3236.

In this case, the applicable statutory redemption period was six months. Mich. Comp. Law  § 600.3240(8). Thus, all rights, title, and interest vested in the purchaser in November 2010 - six months after the foreclosure sale had been completed.

In *Piotrowki v. State Land Office Board*, 4 N.W.2d 514, 517 (1942), the Supreme Court of Michigan held that the mortgagors (1) had "lost all their right, title, and interest in and to the property at the expiration of their right of redemption," and (2) could not assert the right of parties "having an interest in the land" to meet the highest bid at the scavenger sale. The

7

standard under *Piotrowski* has been applied by Michigan courts - and by federal courts applying Michigan law - to bar former owners from making any claims with respect to the property after the end of the redemption period. *Smith v. Wells Fargo Home Mortg., Inc.*, E.D. Mich. No. 09-13988 (Aug. 16, 2010), ECF No. 26 (dismissing former owner's claims of fraud, unjust enrichment, breach of an implied agreement, misrepresentation, unjust enrichment, quiet title, constructive trust, and violation of a breach of public policy for lack of standing because the redemption period expired during pendency of litigation); *Overton v. Mortg. Elec. Registration Sys.*, No. 284950, 2009 WL 1507342 (Mich. App. May 28, 2009) (dismissing former owner's claim of fraud where redemption period expired one month after litigation was initiated); *see also, e.g., Moriarty v. BNC Mortg., Inc.*, No. 10-13860, 2010 WL 5173830 (E.D. Mich. Dec. 15, 2010) (dismissing action for declaratory judgment voiding foreclosure proceedings); *Kama v. Wells Fargo Bank*, No. 10-10514, 2010 WL 4386974 (E.D. Mich. Oct. 29, 2010) (dismissing action for temporary injunction enjoining foreclosure; violation of the foreclosure by advertisement statute, Mich. Comp. Law § 600.3212; quiet title; and promissory estoppel); *Mission of Love v. Evangelist Hutchinson Ministries*, No. 266219, 2007 WL 1094424 (Mich. App. Apr. 12, 2007) (dismissing temporary restraining order and quiet title claims).

The Steins' effort to distinguish this line of authority by asserting that they are only "seek[ing] to set aside the foreclosure sale and have Defendants live up to their legal obligations" (Pls.' Resp. at 10) misses the mark. With recognition that a former owner's rights, title, and interest in land are entirely extinguished upon the expiration of the redemption period, the Steins are precluded from asserting any claim with respect to their alleged property interests unless the redemption period is extended. Thus, they - without an extension of the redemption

period or some other enabling measure - have no standing to assert their claims.  Therefore, their attempt to distinguish the previously mentioned line of authority fails, and the Court must now determine whether, under the circumstances, an equitable extension of the redemption period is authorized and appropriate.

IV.

The Steins submit that they are entitled to an equitable extension of the redemption period for several independent reasons. As an initial matter, the parties have differing views when attempting to identify the standard that must be met to authorize a court to set aside a foreclosure sale after the expiration of the redemption period. The Steins state that courts may extend the redemption period whenever there is "good reason" to do so. They have pointed to several cases in which Michigan courts have used the "good reason" language. *E.g.*, *White v. Burkhardt*, 60 N.W.2d 925, 927 (Mich. 1953); *Detroit Trust Co. v. Agozzinio*, 273 N.W. 747, 748 (Mich. 1937); *Markoff v. Tournier*, 201 N.W. 888, 889 (Mich. 1925). On the other hand, the Defendants assert that parties - such as the Steins  - who seek to overturn a presumptively valid foreclosure must make a specific showing of "fraud, accident, or mistake" related to the foreclosure proceeding. Furthermore, they posit that the Steins have cited cases that are inapplicable to the case at bar.

In *White*, the court determined that, contrary to the plaintiff's assertion, the foreclosure had been conducted in a manner that was in compliance with existing Michigan law. The *White* court also opined that there was no justification for setting aside the foreclosure because the "[p]laintiff had been in default for some 26 months, the period of redemption had expired before she filed her bill of complaint, she had been grossly careless in the preservation and protection

9

of her property, and her proofs [failed] to support her contention of the lack of posting of notice." 60 N.W.2d at 927. Significantly, the court did not analyze or speak to what would constitute a "good reason" for setting aside the foreclosure.

In *Agozzinio*, the court refused to set aside a foreclosure when it rejected the plaintiff's argument that the challenged procedure had not complied with Michigan law. Finally, in *Markoff*, the court (1) refused to set aside one foreclosure action wherein the plaintiff had failed to establish that fraud had been committed; and (2) set aside another foreclosure process because the plaintiff established that - but for the defendant's fraudulent conduct - he would not have permitted the redemption period to lapse. Significantly, none of these cases establish the "good reason" standard that seemingly serves as a foundation for the Steins' argument for when a court has authority to set aside a foreclosure.

On the other hand, the Defendants have pointed to more recent cases that specifically hold that, "because the statute pertaining to redemption clearly specified the requirements that the plaintiff had to fulfill in order to redeem her property, there was 'no room for equitable considerations absent fraud, accident, or mistake.'" *Freeman v. Wozniak*, 617 N.W.2d 46, 48-49 (Mich. App. 2000) (quoting *Senters v. Ottawa Savings Bank*, 503 N.W.2d 639, 643 (Mich. 1993)); *see also Senters*, 503 N.W.2d at 644 (noting that, where foreclosure is by advertisement rather than judicial, "a statute is applicable to the circumstances and dictates the requirements for relief by one party, [and thus] equity will not interfere"). Moreover, the fraud, accident, or mistake must relate to the foreclosure proceeding itself. *See Ellison v. Wells Fargo Home Mortg., Inc.*, No. 09-cv-14175, 2010 WL 3998091 (E.D. Mich. Oct. 12, 2010) (refusing to set aside foreclosure where plaintiff's assertion of fraud related to matters independent of the

10

foreclosure proceedings themselves); *Whitfield v. OCWEN Berkeley Fed. Bank & Trust*, No.

221248, 2001 WL 1699782 (Mich. App. Dec. 28, 2001) (refusing to set aside foreclosure where

plaintiff - who was the owner, but not mortgagor with respect to, the subject property- asserted

that foreclosing party committed fraud by not honoring a promise to notify him of default and

foreclosure because "[t]he type of fraud sufficient to set aside a foreclosure sale must generally

relate to the foreclosure procedure or sale itself").

    In *Freeman*, the court determined that a mortgagor's mental incapacity was not a

situation of fraud, accident, or mistake that would give the authority to the court to set aside the

foreclosure. In *Senters*, the court noted that, despite the fact that "a general notion of injustice

might appear to support defendant's assertion that plaintiff is receiving a windfall at defendant's

expense," the court was without authority to alter the statutory dictates - there, that the

redemption price included only the sale price and specified additions, and thus a foreclosing

party was not entitled to recoup from a redeeming party amounts that he had paid to redeem

other liens on the property - in the absence of fraud, accident, or mistake.

    The Court concludes that the specific standards set out and essential to the holdings in

*Freeman* and *Senters* - rather than the broadly-worded standard that was not essential to the

holdings in *White*, *Markoff*, and *Agozzinio* - must control.[2] Therefore, a court has no authority to

_____

    [2]The Steins' contention that this reading of the foreclosure by advertisement statute is
"patently absurd" and must be rejected is unavailing. The Court fails to see how requiring a
showing of fraud, accident, or a mistake to set aside a foreclosure that had complied with the
Michigan statutory requirements could be said to be "manifestly inconsistent with legislative
intent." *Cameron v. Auto Club Ins. Ass'n*, 718 N.W.2d 784 (Mich. 2006), *overruled on other
grounds by Regents of Univ. of Mich. v. Titan Ins. Co.*, 791 N.W.2d 897 (Mich. 2010).
Moreover, the Defendants correctly point out that an opposite ruling in which foreclosures were
allowed to be set aside too easily would also seem contrary to the legislative intent of ensuring
certainty and finality in property transactions.

set aside a properly conducted foreclosure in the absence of a clear showing of fraud, accident, or mistake in the foreclosure proceedings. Armed now with the proper standard, the Court will turn to the Steins' stated justifications for setting aside the foreclosure.

A.

First, the Steins initially proffer that the publication of foreclosure sale adjournment notices after they had filed a petition for Chapter 7 bankruptcy violated the automatic stay provision within the bankruptcy code. *See* 11 U.S.C. § 362(a)(1) (filing of bankruptcy petition operates as a stay of, *inter alia*, "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title"). They cite *In re Lynn-Weaver*, 385 B.R. 7, 11-12 (Bankr. D. Mass. 2008), for the proposition that a post-petition postponement of a foreclosure sale violates the automatic stay provision. While the Steins are correct in their analysis of *Lynn-Weaver,* the Court is also aware that the vast weight of authority - including binding precedent from the Sixth Circuit - holds to the contrary. Moreover, *Lynn-Weaver* did not address the issue of whether the alleged stay violation justified the setting aside of a foreclosure. Rather, the matter was before the court on the plaintiff's motion for statutory damages against the defendants for that violation pursuant to 11 U.S.C. § 362(k)(1). Thus, even if this case did represent binding authority, *Lynn-Weaver* offers no guidance with respect to whether a stay violation justifies the entry of an order that would set aside the subsequent foreclosure.

Moreover, the Sixth Circuit has held that the publication of a notice of adjournment of a foreclosure sale - as long as the postponement is done in compliance with state law - does not

12

constitute a violation of the automatic stay. *Worthy v. World Wide Fin. Servs.*, 192 Fed. Appx. 369 (6th Cir. 2006), *affirming* 347 F. Supp. 2d 502 (E.D. Mich. 2004). The purpose of the automatic stay is to "give the debtor a breathing spell from his creditors, to stop all collection efforts, stop all harassment of a debtor seeking relief, and to maintain the status quo between the debtor and his creditors." *Worthy*, 347 F. Supp. 2d at 508 (quoting *In re Fine*, 285 B.R. 700, 702 (Bankr. D. Minn. 2002)). If a mortgagee had first published notice of a foreclosure sale prior to the filing of a bankruptcy petition by the mortgagor, a post-petition adjournment "effectuates the purposes of § 362(a)(1) by preserving the status quo until the bankruptcy process is completed or until the creditor obtains relief from the automatic stay." *Id.* at 509 (quoting *Taylor v. Slick*, 178 F.3d 698, 702 (3d Cir. 1999)). Therefore, the Court concludes - the Steins' argument to the contrary notwithstanding - that the publication of notices of adjournment did not violate the automatic stay. Accordingly, the Court need not consider whether such a violation, if shown, would constitute a fraud, accident, or mistake that, in turn, would justify setting aside a foreclosure.

## B.

Next, the Steins allege that the Defendants' failure to comply with the provisions within Agreement 2 constituted a breach of a valid and binding contract, which justifies their request to set aside the foreclosure involving the Melvindale property. However, the Steins have not made any effort to establish the essential elements of a valid contract, *see, e.g.*, *Thomas v. Leja*, 468 N.W.2d 58, 60 (Mich. App. 1990) ("In Michigan, the essential elements of a valid contract are (1) parties competent to contract, (2) a proper subject matter, (3) a legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation."), or the elements of a breach of

13

contract claim, *see, e.g.*, *In re Brown*, 342 F.3d 620, 628 (6th Cir. 2003) ("Once a valid contract has been established, a plaintiff seeking to recover on a breach of contract theory must then prove by a preponderance of the evidence the terms of the contract, that the defendant breached the terms of the contract, and that the breached caused the plaintiff's injury.").

Moreover, the provisions within Agreement 2 clearly state that it is not a promise to modify the loan, but rather a "trial period showing you can make regular payments." (Compl. at Ex. B). It contemplates that, after a successful completion of the trial period, the mortgage "will be reviewed for a loan modification." (*Id.*). Furthermore, the language therein provides that an approval for a loan modification depends upon "investor approval," which is "still pending" and will be based on "investor guidelines." (*Id.*). Thus, Agreement 2 does not appear to be a valid and binding contract or even a promise to modify the mortgage loan, and the Defendants' ultimate refusal to enter into a loan modification does not appear to be a breach of any contractual obligation. Moreover, the agreement is subject to the following term or condition: "The lender, at its option, may institute foreclosure proceedings according to the terms of the note and security instrument without regard to this agreement." (*Id.*). Thus, even if Agreement 2 did constitute a contract, it appears that the decision to go forward with the foreclosure would be in compliance with the terms and conditions of that contract. Finally, the Steins have failed to establish that a breach of Agreement 2 would qualify as fraud, mistake, or accident which would justify an equitable extension of the redemption period. *See Ellison*, 2010 WL 3998091, at *7 (breach of *contractual* notice provision would not justify setting aside foreclosure where *statutory* notice provisions were satisfied).

For all of these reasons, the Court finds that it is without authority to set aside the

14

foreclosure on the basis of Agreement 2 and any alleged breach thereof. This same reasoning makes clear that there is no genuine issue of a material fact with respect to the Steins' independent breach of contract claim, and the Defendants are entitled to judgment as a matter of law on this claim.

C.

The Steins also contend that the Defendants did not comply with the loan modification requirements of Michigan's foreclosure-by-advertisement statute. They appear to allege that the Defendants violated three separate requirements; namely, (1) failing to use a loan modification program that included all the features required by Mich. Comp. Law § 600.3205c(1); (2) not providing the borrower with a copy of the calculations made and, if requested, a copy of the program, process, or guidelines used in determining modification eligibility, Mich. Comp. Law § 600.3205c(5); and (3) circumventing the statutory mediation procedure set out in Mich. Comp. Law § 600.3205a(1) by failing to offer them a loan modification despite their qualification for same. They state that they are "authorized to have the Court enjoin the foreclosure" pursuant to Mich. Comp. L. § 600.3205c(8) and § 600.3205a(5). However, these claims fail for two reasons: (1) the Steins have failed to provide the Court with a basis for finding the alleged violations occurred; and (2) these violations, even if proven, would not authorize the Court to set aside a completed foreclosure.

With respect to the Steins' first contention, the Steins have failed to provide the Court any basis for finding a violation. The Steins simply set out the statutory language in which the requirements are listed, and then conclusorily state that the "Defendants violated [Mich. Comp. L. §] 600.3205c(1) by failing to use a loan modification process that included all of the

15

necessary features." (Pls.' Resp. at 16). That statute provides as follows:

> (1) If a borrower has contacted a housing counselor under section 3205b but the process has not resulted in an agreement to modify the mortgage loan, the person designated under section 3205a(1)(c) shall work with the borrower to determine whether the borrower qualifies for a loan modification. Unless the loan is described in subsection (2) or (3), in making the determination under this subsection, the person designated under section 3205a(1)(c) shall use a loan modification program or process that includes all of the following features:
>
> > (a) The loan modification program or process targets a ratio of the borrower's housing-related debt to the borrower's gross income of 38% or less, on an aggregate basis. Housing-related debt under this subdivision includes mortgage principal and interest, property taxes, insurance, and homeowner's fees.
> >
> > (b) To reach the 38% target specified in subdivision (a), 1 or more of the following features:
> >
> > > (i) An interest rate reduction, as needed, subject to a floor of 3%, for a fixed term of at least 5 years.
> > >
> > > (ii) An extension of the amortization period for the loan term, to 40 years or less from the date of the loan modification.
> > >
> > > (iii) Deferral of some portion of the amount of the unpaid principal balance of 20% or less, until maturity, refinancing of the loan, or sale of the property.
> > >
> > > (iv) Reduction or elimination of late fees.

Mich. Comp. L. § 3205c.

The Steins give no indication of what features of the Defendants' process were inadequate or missing. Moreover, the Court notes that the Steins asserted in the statements of fact in both the complaint and response to the Defendants' pending dispositive motion that a separate set of guidelines weas applicable to their loan because it was an FHA loan. (*See* Compl. ¶¶ 27-31; Pls.' Resp. at 8-9). The requirements of § 3205c(1) are supplanted by § 3205c(2) when the loan in question "is pooled for sale to an investor that is a governmental entity." In such cases, the modification guidelines are those set out by the relevant

16

governmental entity. The Steins had alleged that, pursuant to the relevant guidelines - which they have not provided for the Court - "Defendants were required to multiply Plaintiffs' gross monthly income by 31% and thereby determine [their] monthly 'housing-related debt.'" (Compl. ¶ 29). Because the Steins have failed to clearly identify what provision even applies, much less specify how the Defendants violated that provision, the Court is unable to find that this purported violation, if established, would constitute fraud, accident, or mistake justifying extending the redemption period.

The Steins have also not articulated with any specificity how the Defendants violated the requirement of Mich. Comp. L. § 600.3205c(5) that they provide a copy of the calculations and, upon request, policies and procedures used to determine eligibility for a loan modification. Their argument on this contention states - in its entirety - only that "Defendants likewise failed to comply with these sections." (Pls.' Resp. at 17). Moreover, and once again, the Steins have failed to argue, let alone establish, that this purported violation constitutes fraud, accident, or mistake in the foreclosure proceedings.

With respect to the Steins' third argument, as noted above, the Steins have argued that two separate - and seemingly mutually exclusive - provisions governed the Defendants' obligation to offer them a loan modification. The Steins have presented no evidence that would permit the Court to determine which provision applies to their mortgage. In addition, although the Steins have *asserted* that they were eligible for a loan, they have not *shown* that, for the purposes of defeating a motion for summary judgment, by reference to any evidence in the record. Because the Court does not know what statutory provision applies and the Steins have presented no evidence regarding their income and property-related debt, the Court is unable to

17

undertake any analysis of whether they were qualified for a modification. In any event, the

Steins acknowledge that loan modification is not mandatory upon demonstration of

qualification. Rather, if a mortgagee declines to modify a loan despite the mortgagor's

eligibility, the mortgagee is not permitted to pursue foreclosure by advertisement, and must

instead proceed via judicial foreclosure. Mich. Comp. L. § 600.3205a(1)(g).

These claims suffer from a more fundamental flaw: even if these violations were proven,

the Steins have not articulated how the violations would authorize the Court to set aside the

foreclosure. Mich. Comp. L. § 600.3205c(8) - which the Steins allege as one basis for the

Court's authority - provides as follows:

> If a mortgage holder or mortgage servicer begins foreclosure proceedings under
> this chapter in violation of this section, the borrower may file an action in the
> circuit court for the county where the mortgaged property is situated to convert
> the foreclosure proceeding to a judicial foreclosure. If a borrower files an action
> under this section and the court determines that the borrower participated in the
> process under section 3205b, a modification agreement was not reached, and the
> borrower is eligible for modification under subsection (1), and subsection (7)
> does not apply, the court shall enjoin foreclosure of the mortgage by
> advertisement and order that the foreclosure proceed under chapter 31.

This provision allows a mortgagor to file an action to convert a foreclosure by advertisement

into a judicial foreclosure. The remedy available to the Steins under this provision - assuming

*arguendo* that they were eligible for it - was one that they were required to specifically seek out

prior to the consummation of the foreclosure by advertisement. The provision allows certain

borrowers to determine the *type* of foreclosure proceeding, not to avoid foreclosure altogether

or set aside an already-completed foreclosure. Moreover, there is no evidence that the Steins

availed themselves of this provision while they retained title, rights, or an interest in the

property. Their failure to do so cannot constitute the type of fraud, accident, or mistake that

18

would be required to set aside the foreclosure.

The Steins also allege that Mich. Comp. L. § 600.3205a(5) authorizes the Court to enjoin the foreclosure. That provision provides as follows:

> A borrower on whom notice is required to be served under this section who is not served and against whom foreclosure proceedings are commenced under this chapter may bring an action in the circuit court for the county in which the mortgaged property is situated to enjoin the foreclosure.

However, the Steins have not alleged any failure of notice. This statute is thus wholly inapplicable to the violations they have alleged. In addition, the Court notes that the time for enjoining the foreclosure has long since passed; what they seek is *not* an order enjoining the foreclosure but rather an order setting aside an already-finalized foreclosure after the redemption period has expired. However, as with the Steins' other contentions, they have made no effort to demonstrate that this purported violation constitutes fraud, accident, or mistake in the foreclosure proceedings that would authorize the Court to set it aside.

In light of the foregoing, the Court concludes that no genuine issue of material fact exists with respect to the claim that the Defendants committed a violation of the Michigan foreclosure by advertisement statute that would constitute fraud, accident, or mistake in the foreclosure proceedings that would grant this Court authority to set aside the foreclosure.

D.

Finally, the Steins submit that the Defendants lacked the legal right to foreclose on their mortgage due to the irregularities in the record chain of title. In making this point, they point to two perceived errors regarding an assignment of mortgage that was executed before the foreclosure sale was scheduled to occur. First, they state that the assignment purported to

19

transfer the mortgage to Bancorp (there named as U.S. Bank) as the trustee for Wells Fargo from an entity that had ceased to exist in 2008 (Washington Mutual Bank) and therefore could have had no interest to convey. Second, they note that the assignment was signed by H. John Kennerty, the Vice President of Loan Documentation for Wells Fargo, who has, in a separate proceeding, given deposition testimony in which he acknowledged having regularly signed between 50 and 150 foreclosure-related documents per day without reading or verifying their contents. The Steins submit that "[t]his fact alone should bring into serious doubt whether Defendants had standing to foreclose at the time of the foreclosure sale." (Pls.' Resp. at 20). Thus, they claim, the Court should grant a summary judgment in their favor and set aside the foreclosure sale. The Steins advance this argument without citing any authority for their claim that either of these circumstances, if true, would justify setting aside the foreclosure.

The Defendants deny that there was any irregularity in the challenged assignments. Furthermore, they submit that, even if there were any irregularities, the Steins - as non-parties to these assignments - lack standing to proffer any challenge. The Defendants are correct, so far as their argument goes. *See Livonia Props. v. 12840-12976 Farmington Road Holdings, LLC*, No. 10-1782, 2010 WL 4275305, *4 (6th Cir. Oct. 28, 2010) (citation and internal quotation marks omitted) ("[T]here is ample authority to support the proposition that a litigant who is not a party to an assignment lacks standing to challenge that assignment."); *Jarbo v. BAC Home Loan Serv.*, No. 10-12632, 2010 WL 5173825 (E.D. Mich. Dec. 15, 2010) (rejecting borrower's claim that defective assignment destroys record chain of title and divests mortgage holder of standing to foreclose).

In *Livonia*, the borrower challenged the validity of a mortgage assignment where the

20

assignee was not even in existence as of the date of the transfer. The assignee, in turn, had assigned the mortgage to the foreclosing party. The court rejected the borrower's challenge to the foreclosing party's chain of title on two independent grounds; namely, (1) the invalidation of the interim assignment would not destroy the record chain of title because the public record would remain unchanged; and (2) even if the assignment was flawed, the borrower, as a non-party to the assignment, lacked standing to raise that defect as a challenge to the foreclosing party's chain of title. *Id.* Because the foreclosing party had shown that it was the owner of the indebtedness - and thus the borrower was not at risk of double liability on the loan - any irregularities in the assignments by which that party obtained the note were irrelevant with respect to the borrower's rights and responsibilities related to the mortgage. *Id.* Here, as in *Livonia*, the Steins were not parties to the challenged assignment. Furthermore, its validity or invalidity would not have any effect on the public record. Thus, they lack standing to challenge the purportedly improper or invalid assignment.

The Court notes an additional problem with the Steins' challenge to Wells Fargo's standing to foreclose their mortgage; to wit, they made payments to, and thereafter sought and agreed to special forbearance agreements with, Wells Fargo - all without questioning its right to receive payment. Moreover, the Steins acknowledged, in both forbearance agreements, that "[a]ll of the provisions of the note and security instrument, except as herein provided, shall remain in full force and effect." (Compl. at Ex. A, Ex. B.). These circumstances are nearly identical to those in *Livonia*, where the court noted that the borrower's prior actions were incompatible with their current challenge to the validity of the defendants' status as assignees:

Any claim by Livonia [the borrower] that [the foreclosing party] or the Trust [the

interim holder] before it was not a valid assignee of the mortgage rings hollow, as Livonia made mortgage payments directly to the Trust for years without questioning the Trust's right to receive payment. Further, when Livonia first encountered difficulties in repayment, it entered into a prenegotiation agreement with the Trust. Standing alone, the existence of that agreement makes Livonia's current questioning of the mortgage's ownership or assignments appear disingenuous, but the agreement's specific terms further weaken the claim. In the agreement, Livonia expressly acknowledged that "[t]he Loan Documents are in full force and effect and are binding on the Borrower in accordance with their terms." Even if Livonia had standing, therefore, Farmington would likely have valid equitable defenses of estoppel and laches based on Livonia's prior actions.

*Livonia*, 2010 WL 4275305, at *5.

Thus, the Defendants are correct when they argue that the Steins lack standing to assert irregularities in the chain of assignments to which they were not parties. However, they *do* have standing to challenge whether the foreclosing party held record chain of title as of the date of the foreclosure sale - "but that determination is limited to an examination of the public records." *Livonia*, 2010 WL at *5. Mich. Comp. Law § 600.3204(3) provides that, "[i]f the party foreclosing a mortgage by advertisement is not the original mortgagee, a record chain of title shall exist prior to the date of sale . . . evidencing the assignment of the mortgage to the party foreclosing the mortgage."

The Steins' own evidence demonstrates that the assignment of the mortgage to the Defendants was properly recorded by "Liber" and "Page" numbers with the Wayne County Register of Deeds. (*See* Pls.' Resp., Ex. F); *see also Gathing v. MERS, Inc.*, No. 1:09-CV-07, 2010 WL 889945, at *15 (E.D. Mich. Mar. 10, 2010) (rejecting borrower's claim that bank lacked standing to foreclose where assignment was recorded after first publication of foreclosure notice, and noting that, under the current version of § 600.3204(3), record chain of title only needs to exist as of the date of the foreclosure sale). Moreover, the foreclosure was

22

initiated by Wells Fargo, and the Steins do not dispute that Wells Fargo was the servicer of the loan during the foreclosure. *See* Mich. Comp. L. § 600.3204(1) (parties who may foreclose by advertisement are "either the owner of the indebtedness or of an interest in the indebtedness secured by the mortgage or the servicing agent of the mortgage"); Compl. ¶ 10 ("Defendant Wells Fargo was the loan servicer for part of the relevant period of time including during the foreclosure sale of the Property."); *see also Muneio v. Fed. Nat'l Mortg. Ass'n*, No. 09-12973, 2010 WL 5146328, at *2 and n.4 (E.D. Mich. Dec. 13, 2010) (citing Mich. Comp. L. § 600.3204(1)(d)) (citations omitted) (plaintiffs lacked standing to assert claim to property after redemption period expired, but "[e]ven assuming [plaintiffs] had standing, their allegation that the foreclosure was invalid because Chase 'had no standing upon which to pursue a mortgage foreclosure' fails to state a claim. [Plaintiffs] admit that Chase was servicing the loan at the time they were in default of the loan. Therefore, Chase did have standing to foreclose."). Thus, the Steins' cannot prevail on their argument that the Defendants lacked standing to foreclose.

V.

For the reasons that have been set forth above, the Defendants' motion for summary judgment is granted.


IT IS SO ORDERED.

Dated:  February 24, 2011                          s/Julian Abele Cook, Jr.
          Detroit, Michigan                        JULIAN ABELE COOK, JR.
                                                   United States District Court Judge

23

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on February 24, 2011.

s/ Kay Doaks
Case Manager